UNITED STATES *v.* SONTAG'S SHOE STORES

No. 6091.—Invoices dated Guadalajara, Mexico, June 20, 1938, etc.
Certified June 20, 1938, etc.
Entered at Miama, Fla., July 18, 1938, etc.
Entry No. M-22, etc.

First Division, Appellate Term

(Decided February 1, 1945)

*Paul P. Rao*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.

*S. Pierre Robineau* (*Amos Benjamin* of counsel) for the appellee.

Before OLIVER and COLE, Judges [1]

OLIVER, Presiding Judge: These are applications for review of the decision of a single judge sitting in reappraisement concerning the dutiable values of huaraches, a type of sandal, purchased from three different exporters located in Guadalajara, Mexico.

Appraisement in each case was made on the basis of export value, the formula for which is set forth in section 402 (d) of the Tariff Act of 1930, at values expressed in Mexican pesos, in each case higher than the unit values shown on the invoices, which are also in Mexican currency. The court below held the appraisements to be void, and also held that the evidence warranted a finding that export value was the proper basis for appraisement, there being no higher foreign value, and that such export values were the unit invoice prices, plus the charges for cases and packing as returned by the appraiser. Both of these findings are assigned as error.

The basis for the trial court's holding the appraisements to be invalid appears to be the testimony of the examiner and acting appraiser who appraised the merchandise, and who was called to the stand by the defendant below, appellant here. Apparently the merchandise covered by Reappraisements 128683–A and 128684–A was before him at the same time, the notations on the official papers showing that both entries were made July 7, 1938, and that the merchandise covered thereby was examined on July 8, 1938. It also appears that the merchandise covered by Reappraisement 128682–A was entered July 18, 1938, and was examined July 19, 1938, and that all three shipments were appraised on August 30, 1938.

The acting appraiser testified that he found on the invoice under Reappraisement 128683–A the following statement in Spanish: "Pagadero en Moneda Americana al tipo official de 3.60," which he translated as: "To be paid in money at the official rate of 3.60 Mex." This seems to be a little free in translation, and a closer translation would probably be: "Payable in American Money at the official rate of 3.60."

A rate of 3.60 Mexican pesos to the United States dollar amounts to approximately $0.277 per peso. Just what was meant by "official" rate does not appear, but there is no doubt that it did *not* mean the rate proclaimed by the Secretary of the Treasury under the provisions of section 522 (b) of the Tariff Act of 1930 for no such rate was pro-

[1] The opinion in this case was prepared by the late Judge Walker, it being one of the last opinions prepared by him. It was adopted by a majority of the court, with a few minor changes, subsequent to his death which occurred on January 18, 1945.

claimed for the quarter within which the merchandise was exported from Mexico (T. D. 49491), and we are certain it did not mean the rate certified by the Federal Reserve Bank of New York to the Secretary of the Treasury under section 522 (c) for the reason that on the date of exportation, June 17, 1938, that rate was $0.208125 (T. D. 49632).

Apparently it meant a fixed rate of exchange, so that the purchase represented by the invoice was actually a dollar transaction, and not a transaction in Mexican currency.

On direct examination by Government counsel, the acting appraiser was asked if he based his appraisement upon the value that would be shown by that fixed rate of exchange, and he answered in the affirmative, and from subsequent testimony it developed that he mathematized the invoice values, which were in Mexican currency, into United States dollars at the fixed rate of exchange specified, and then performed the operation of computing the value so found in dollars into Mexican currency at the market rate of exchange certified by the Federal Reserve Bank of New York to the Secretary of the Treasury for the date of exportation, June 17, 1938. This resulted in appraised values expressed in terms of Mexican currency which were higher than the invoice values in the same currency.

There was no notation as to a fixed rate of exchange on the other two invoices covered by these appeals, but the acting appraiser testified that he appraised them on the same basis because of confidential information in his possession.

The trial court held, as hereinbefore noted, that the appraisements were void because they were based upon a wrong principle in that—

* * *. The appraiser did not attempt to find the values at which the sandals were freely offered for sale in Mexico for exportation to the United States on the various dates of exportation, but based his appraisal on the theory that the importer paid more for the merchandise because one of the invoices indicated that it was sold on the basis of a fixed rate of exchange.

The court below cited the case of *United States* v. *Alatary Mica Co.*, 19 C. C. P. A. 30, T. D. 44871, which in turn cited *United States* v. *Irving Massin & Bros.*, 16 C. C. P. A. 19, T. D. 42714, for the proposition that an appraisement by the United States Customs Court was invalid where the court estimated the value by a method of computation. As we read those cases, however, the decisions held that where there is no such or similar merchandise upon which appraisement may be based, it cannot be made by comparison—

* * * by taking some proportionate part of the foreign value of comparable goods of different grade or value.

There is no suggestion of such a situation here, and the citations are inapplicable.

Likewise cited were the cases of *Giovanni Ascione* v. *United States*,

32 Treas. Dec. 725, T. D. 37252 (G. A. 8077); *United States* v. *Jose Ferrari et al.*, Reap. Dec. 2489, and *Collin & Gissel* v. *United States,* Reap. Dec. 4183.

From a study of these cases the court came to the following conclusion:

It is apparent that the weight of authority is to the effect that the appraiser cannot convert the currency of the unit price of merchandise in making an appraisal.

There is no question but that where the appraisement is made in foreign currency, conversion of that currency into United States dollars for the purpose of calculating duties, etc., is a function of the collector, and it therefore follows that the appraiser cannot find or state the value of the unit of currency in which he appraised the merchandise, for he would then be usurping the function of the collector.

It is the appraiser's duty, however, to determine the currency of the appraisement. He is required by section 500 (a) of the Tariff Act of 1930,

* * * under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding * * *.

and under article 776 (e) of the Customs Regulations of 1937, which were in force and effect at the time the merchandise in issue was imported, he was required to return the merchandise in the currency—

* * * in which identical or similar merchandise is usually bought and sold in the ordinary course of trade for domestic consumption in the country of exportation or for exportation to the United States, depending upon whether the foreign or export value is adopted as the basis of appraisement.

Now, in the case at bar it is clear from the return made by the appraiser that he determined that export value was the proper basis of appraisement and that the currency in which identical or similar merchandise to that at bar was usually bought and sold in the ordinary course of trade for exportation to the United States was Mexican currency, notwithstanding that the merchandise involved in Reappraisement 128683–A was actually purchased in dollars. Having determined that, he was, under the regulations just quoted, required to return it in Mexican currency.

As we have said, had the appraiser sought to find or state the value of the unit of currency in which he appraised the merchandise, he would have exceeded his powers, but this he did not do. Without passing on the propriety of the testimony of the acting appraiser

explaining his method of appraisal, we find nothing improper in his return of value.

We are satisfied that the appraisements were not void, and we hold that the decision of the court below holding them to be void was error. We find nothing in the record with respect to the appraisements to indicate that they were erroneous, as distinguished from invalid, and the next inquiry in order is therefore properly addressed to the proof offered on behalf of the plaintiff below.

The trial court entered judgment that the unit invoice values, plus charges for cases and packing as returned by the appraiser, represented the dutiable export value of the merchandise at bar, and this is assigned as error.

From the testimony taken at the trial it appears that David Sontag, owner of the plaintiff firm, went to Mexico in 1938 and while there purchased certain samples of huaraches from the exporters and sent them to his son, Alfred Sontag, in Miami. The latter made selections from the samples sent and returned them to the exporters with orders which resulted in the instant shipments.

There were, it appears, three separate exporters, viz, James Dubin (Reappt. 128682–A), "Guadalajara" Huarache Factory (Reappt. 128683–A), and The Mexican Indian Artcraft (Reappt. 128684–A). The case of the plaintiff below was presented on the theory that the prices stated on the invoices in Mexican currency were the prices actually paid and that they were freely offered to all purchasers. As a matter of fact, the evidence does not establish that the prices stated on the invoices *in Mexican currency* were the prices actually paid. It will be recalled that the invoice under Reappraisement 128683–A, although specifying certain prices in Mexican currency, showed on its face that payment was to be made in United States dollars at a fixed rate of exchange which, in effect, made the true prices higher than those stated on the invoice in Mexican pesos. It is true that neither of the other two invoices contain such a statement, but there is no competent evidence to prove that the invoiced unit price was actually paid in those cases—in fact, the evidence would indicate a contrary state of facts.

From the testimony of Mrs. Fisher, the bookkeeper, payment was made in each case upon presentation of a draft, "and we paid just what we were asked." She further testified that the prices quoted and paid were in United States dollars, which would indicate that it was not the unit invoice prices that were paid, but the higher dollar prices based upon the fixed rate of exchange. This is supported by the following testimony of Albert Sontag, given on recross examination:

R. X Q. Do you know whether these were purchased or had been sold, rather, to your concern on a fixed rate of exchange, rate being 3.6 pesos on the dollar?

Do you know that?—A. I called up the bank, we called up the bank a number of times, and they told us one time it was 3.6, that is right.

In exhibit 1, which is in the form of a letter addressed to the plaintiff, containing the jurat of the American Consul at Guadalajara at the bottom, one Victor E. Gaysinsky, who describes himself as the owner of The Mexican Indian Artcraft, one of the exporters herein, states—

* * *. I wish to say that payment for these was received by me in U. S. Cy. at the then current rate of exchange to my entire satisfaction.

Just what the basis of payment was, whether at the unit invoice prices converted into dollars at the prevailing rate of exchange or at a fixed rate of exchange, is not stated.

Since plaintiff below elected to base its case on the prices actually paid by it, we think it was incumbent upon it to establish what those prices were. Under the circumstances, the record does not support the holding of the trial court that the unit invoice values, plus the charges for cases and packing as returned by the appraiser, were the export values as defined in section 402 (d) of the Tariff Act of 1930, but warrants only a holding that the plaintiff failed to establish values for the merchandise other than those found by the appraiser.

We so hold, and the judgment of the trial court is reversed, and the values of the merchandise are held to be those found by the appraiser.

Judgment will be rendered accordingly.