GOTHIC WATCH CO. *v.* UNITED STATES

**No. 7438.**—Invoice dated La-Chaux-de-Fonds, Switzerland, September 1943.
Certified September 1943.
Entered at New York, N. Y., December 28, 1943.
Entry No. 718904.

(Decided November 18, 1947)

*James W. Bevans* (*James W. Bevans* of counsel, *William Fox*, associate counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Michael Stramiello, Jr.*, and *John J. Antus*, special attorneys), for the defendant.

LAWRENCE, Judge: This appeal for reappraisement challenges the legality of certain administrative procedure. It has been carefully and thoroughly presented upon a record comprising both testimonial and documentary evidence. Stripped of nonessentials, the salient facts of the case, which are not disputed, are here set forth in chronological order.

In December 1943 the plaintiff brought into this country from Switzerland certain watches which were entered by the importer at the invoice value in Swiss francs.

In January 1944 the United States appraiser of merchandise sent his report of value to the collector of customs on customs Form 6417 entitled "Summary of Examination and Appraisement" (hereinafter referred to as the summary sheet). This summary sheet was stamped "Approved" under date of January 6, 1944, over the signature of the appraiser of the port.

In the column entitled "Appraised" on the summary sheet there appears a check mark (✓) in red ink. The instructions on the summary sheet provide that such check mark shall be placed in the column entitled "Appraised" when the appraised value agrees with the entered value which is represented by the information set forth on the invoice or in importer's notations endorsed thereon or attached thereto. Said summary sheet was received in the office of the collector of customs on January 7, 1944.

More than 2 years thereafter, namely, between the months of March and May 1946, and pursuant to certain instructions from the Bureau of Customs published in 81 Treas. Dec. 23, T. D. 51398, the invoice and accompanying papers were returned to the appraiser by the collector. Subsequently, said invoice and accompanying papers were again transmitted to the collector by the appraiser and were received in the office of the collector on June 24, 1946. At that time it appears that the red-ink check mark in the column entitled "Appraised" on the summary sheet, together with the stamped approval, date, and signature of the appraiser, which appeared on said sheet when the report was first received by the collector from the appraiser January 7, 1944, had been stricken out in red ink and marked "Void HHC 6/18/46" and new notations had been made thereon as follows: In the column marked "Appraised" there was noted in red ink "Adv HHC 6/18/46," and across the face of the summary sheet appeared the words, by means of a rubber stamp, "Appraised in Free Swiss

Francs (T. D. 51398)," and the summary sheet had been re-signed in black ink by the appraiser and dated June 18, 1946.

The notation that had previously been entered for the receipt of this invoice, in the collector's official record of invoices returned by the appraiser, was stricken out in lead pencil by a clerk in the collector's office and the notation "June 24, 1946 Adv. V." was entered in said record in lieu of the original notation stricken by said clerk: The notation "Adv. V." indicates that the value of the merchandise reported by the appraiser on June 18, 1946, was higher than the entered value thereof and consequently that the merchandise was advanced in value. Therefore, the collector in due course gave written notice of appraisement covering the importation pursuant to the provisions of section 501 of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and an appeal for reappraisement was filed by plaintiff within the time specified by section 501, *supra*. Said section 501, so far as here pertinent, reads—

(a) The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value * * *. The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the United States Customs Court by the collector within sixty days after the date of the appraiser's report, or filed by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. * * *

Substantially all of the facts recited above are borne out by a stipulation entered into between the parties and received in evidence as plaintiff's exhibit 1.

Plaintiff contends that when the appraiser forwarded his report of appraisement which was received by the collector of customs on January 7, 1944, there had been a final appraisement in compliance with the requirements of law (section 500, Tariff Act of 1930), and that the action of the appraiser on June 18, 1946, *supra*, was null and void, since the appraiser had lost jurisdiction to reconsider the value reported and returned to the collector on January 7, 1944.

For convenient reference, section 500, *supra*, so far as material to this case, reads—

(a) APPRAISER.—It shall be the duty of the appraiser under such rules and regulations as the Secretary of the Treasury may prescribe—

(1) To appraise the merchandise in the unit of quantity in which the merchandise is usually bought and sold by ascertaining or estimating the value thereof by all reasonable ways and means in his power, any statement of cost or cost of production in any invoice, affidavit, declaration, or other document to the contrary notwithstanding;

(2) To ascertain the number of yards, parcels, or quantities of the merchandise ordered or designated for examination;

(3) To ascertain whether the merchandise has been truly and correctly invoiced;

(4) To describe the merchandise in order that the collector may determine the dutiable classification thereof; and

(5) To report his decisions to the collector.

The record establishes that the value returned by the appraiser on January 6, 1944, was in the class of currency which the Treasury Department in T. D. 51398, *supra*, designates as "official" or "commercial." The value of the franc in which the merchandise was entered and upon which the original return of the appraiser was based is disclosed by the conversion factors appearing on the summary sheet.

As noted above, the report of the appraiser dated January 6, 1944, *supra*, indicated no advance in the entered value, whereas the second report, dated June 18, 1946, which specifically states that it is in terms of what the Treasury Department refers to as "free francs," did result in a substantial advance over the entered value. As a matter of fact, the difference between the entered value and the value reported by the appraiser in his return of June 18, 1946, is measured by the difference in rates of exchange employed by the appraiser in his two reports.

The defendant admits "that once the appraiser has made a return of a complete, final and legal appraisal it cannot be modified or amended by him after it has been filed with the collector." It contends, however, that the appraisal in this case was not "complete, final and legal" because "* * * said act did not give the liquidator sufficient information upon which a legal liquidation could be made, and also because it attempted to place a value on the merchandise in suit in a unit of value that did not then exist for customs purposes." Defendant's further contention is "* * * that the appraiser's first act of January 6, 1944, was illegal and a nullity because the currency of the invoice which was adopted by the appraiser did not exist for customs purposes and because mandatory acts required by the Customs Manual promulgated by the Secretary of the Treasury were not complied with."

When the facts and the respective claims are reduced to their simplest terms, the case presents a narrow issue which in reality is not new. It seems clear from the authorities which will be cited *infra* that the issue has been settled in principle for a great many years.

Plaintiff invites the court's attention to the following authorities, *Ringk & Co.* v. *United States*, 12 Ct. Cust. Appls. 40, T. D. 39980 (1924), and *F. W. Myers & Co.* v. *United States*, 36 Treas. Dec. 194, T. D. 37934, G. A. 8238 (1919).

In the *Ringk* case, *supra*, it appears from the opinion of the court that the merchandise there involved was entered at 13,354.18 yen. The invoice showed a net dutiable valuation of 13,354.18 Peiyang dollars. The appraiser approved the valuation given in the entry, to

wit, 13,354.18 yen, and officially reported that fact to the collector. At that time the yen was valued at $0.4985, the Peiyang dollar at $0.7883. No appeal was taken for a reappraisement.

Almost a year subsequent to the time of the foregoing transaction, the collector transmitted to the appraiser's office the report above referred to, indorsed as follows: "Appr., please note invoice is made out in P. Y. $ & not yen. Report further." Whereupon the acting appraiser, not, however, the one who had made the appraisement, returned the report to the collector indorsed as follows: "Collector, this office amends return to read currency as P. Y. $." The indorsements were signed by the respective officers. Conformably with these notations the second appraiser noted the symbol P. Y. $ in red ink upon the official report of the appraisement and erased the word "yen" which had appeared thereon. The collector thereupon liquidated the entry upon a valuation of 13,354.18 Peiyang dollars, which represented a value approximately 50 per centum in excess of that number of yen.

Protest by importer was overruled by the trial court (*A. H. Ringk & Co.* v. *United States,* 44 Treas. Dec. 66, T. D. 39756, G. A. 8677), and that tribunal's ruling was reversed on appeal (*Ringk & Co.* v. *United States, supra*), our appellate court stating—

We are of the opinion upon the foregoing facts that the collector's action was erroneous, and that the importer's protest should have been sustained by the board. It is clear that the importer regularly and in plain terms entered the merchandise at a net valuation of 13,354.18 yen, converting the same upon the entry into $6,657. He certainly had a right to make his own statement in the entry as to the value of the merchandise. It is true that the invoice and entered values thereby became inconsistent and could not both be correct, but it was not manifest upon the face of the instruments which one was erroneous and which was correct. That would be a matter of extraneous proof, and non constat but that the entry was correct and the invoice mistaken. When the goods were entered it became the duty of the appraiser to appraise them at their true value, and he was not bound by the statements of either the invoice or entry. *He performed that duty by approving the entered value, and if the collector was dissatisfied therewith he was entitled to appeal to reappraisement.* When the time allowed for such an appeal had passed the appraisement became final, and the collector was bound to liquidate accordingly. *The subsequent attempt to amend the return of the first appraiser was unauthorized, for if permitted it would have had the effect of altering the regular official appraisement by advancing the appraised value in a substantial sum.* It would have amounted to a virtual reappraisement of the merchandise effectuated in such a manner as to prevent the importer from appealing therefrom. *Moreover it is well settled by the authorities that the return of the appraiser as to value can not be modified or amended by him after it has been filed with the collector, except in case of a manifest clerical error.* And as already stated the difference between the invoice and entered values in this case can not be regarded as involving a manifest clerical error.—United States *v.* Frank (2 Ct. Cust. Appls. 239; T. D. 31973); United States *v.* Bennett (id. 249; T. D. 31975); United States *v.* Moorewood, (94 Fed. 639); article 584, Customs Regulations, 1915. [Italics supplied.]

A similar question of legality of appraisement was also involved in the *Myers* case, *supra*, from which we glean the following facts. On April 4, 1917, F. W. Myers & Co. made an entry of 250 sets of automobile tires and tubes imported at the subport of Port Huron, Mich. On said date the appraiser made this written notation on the summary attached to the invoice: "April 4, 1917. Value correct. Edward Colquitt, appraiser," and thereupon forwarded the papers to the collector. On or about April 8, 1917, the appraiser requested that said invoice and summary be returned to him, whereupon he removed the summary, which had been permanently attached to the invoice, and substituted in lieu thereof another summary which had been prepared by the deputy collector. Upon this substituted summary the appraiser, in writing, made a different notation reading: "Invoice not correct. No fraud intended." And upon the invoice he made the following notation: "Appraiser increases to make market value 10 per set," and forwarded this second return to the collector on June 21, 1917.

It was not until some time after proceedings were held on reappraisement that the substituted summary came to the knowledge of the importers. They then filed a protest claiming that the second return of the appraiser and the proceedings thereupon had were null and void and that the original return constituted the only legal appraisement of the merchandise.

This court (then known as the Board of United States General Appraisers) in its opinion in *F. W. Myers & Co., supra*, stated—

On the hearing the Government sought to justify the belated action of the appraiser on the ground that the original return was made through inadvertence. But, conceding this to be the fact, the action of the appraiser was nevertheless contrary to law. His remedy in the premises is clearly prescribed by statute. It was his duty to request the collector to file an appeal to reappraisement from his original return, pursuant to the provisions of paragraph M of the tariff. It has been frequently held that where an appraiser has once appraised imported merchandise, and has forwarded his return to the collector, his jurisdiction in the premises is at an end. As to that particular merchandise he is functus officio, the jurisdiction of the collector having attached where that of the appraiser had ended.

*        *        *        *        *        *        *

Plainly, by his own testimony, the appraiser admits that he made a second appraisement after the return of his first and only legal appraisement to the collector. We therefore hold the second appraisement to be invalid and without warrant of law. United States *v.* Bennett (2 Ct. Cust. Appls. 249; T. D. 31975), G. A. 8129 (T. D. 37508), G. A. 5100 (T. D. 23601), and G. A. 3292 (T. D. 16647), In re G. W. Reed & Co., G. A. 7563 (T. D. 34455).

*        *        *        *        *        *        *

*In the present case the proof shows that the sole purpose sought to be accomplished by the appraiser was to change his appraisement on the ground that his first return was made through inadvertence. Of course, in law his action in this respect was null and void, nor did it become legal and valid by reason of the fact that the importers filed an appeal therefrom. As the matter now stands, the original appraisement*

*never having been challenged, under the statute it has become final, and it forms the only basis upon which duties can be legally exacted.* [Italics supplied.]

In the opinion of the court, the decisions in the *Ringk* and *Myers* cases, *supra*, together with the authorities cited therein, compel the conclusion that the appraiser's action of June 18, 1946, in attempting to change his original appraisement of January 6, 1944, was beyond the scope of his authority and hence illegal. Note also *United States v. Dorn & Co.*, 13 Ct. Cust. Appls. 130, T. D. 40961. It is clear to the court that when the appraiser sent his report of value dated January 6, 1944, to the collector of customs, the appraiser had performed the physical act of appraisement of the merchandise covered by the report. Section 500, *supra*. Whether or not the appraiser committed errors of law or of fact in the performance of that duty are questions not properly before the court for determination in this proceeding. Those are matters which could have been appropriately reviewed upon an appeal for reappraisement from the appraiser's decision of January 6, 1944. Section 501, *supra*.

The following cases are cited by defendant in support of its contentions as to the legality of the appraiser's action of June 18, 1946, in changing the original return of value of January 6, 1944: *Ainslee Knitting Machine Co., Inc. v. United States*, 69 Treas. Dec. 954, T. D. 48339; *A. J. Bracher Co. v. United States*, 68 Treas. Dec. 404, T. D. 47935; *Klingerit, Inc. v. United States*, 14 Cust. Ct. 435, Reap. Dec. 6159; *United States v. Sontag's Shoe Stores*, 14 Cust. Ct. 314, Reap. Dec. 6091; *Michaelian & Kohlberg, Inc. v. United States*, 73 Treas. Dec. 156, T. D. 49375; *Independent Forwarding Co. (Inc.) v. United States*, 60 Treas. Dec. 757, T. D. 45237, decided on rehearing in 61 Treas. Dec. 1634, Abstract 20023; *S. Koshland & Co. et al. v. United States*, 10 Treas. Dec. 11, T. D. 26572 (G. A. 6095); *Hadden v. Merritt*, 115 U. S. 25; *Barr v. United States*, 324 U. S. 83; *United States v. V. W. Davis, Sinai Kosher Sausage Factory*, 20 C. C. P. A. (Customs) 305, T. D. 46087; *United States v. F. W. Woolworth Co. et al.*, 22 C. C. P. A. (Customs) 184, T. D. 47126; *United States v. Tampa Box Co.*, 15 Ct. Cust. Appls. 360, T. D. 42561; *United States v. Passavant*, 169 U. S. 16; *United States v. Alex. Murphy & Co.*, 55 Treas. Dec. 273, T. D. 43210.

The above-cited cases are readily distinguishable from the controversy at bar. In those cases the aggrieved parties invoked the proper judicial remedy under the applicable tariff acts to decide whether or not there had been an invalid, erroneous, or irregular administrative act. In the case now before us, however, it was sought to correct by administrative action the original appraisement of the merchandise which was consummated by the appraiser in accordance with section 500, *supra*, on January 6, 1944, rather than by invoking the statutory remedy provided in section 501, *supra*.

The attention of the court has not been drawn to any case in which failure of appraisers to perform properly their statutory duty, or where, in the performance of their statutory duty, errors which have been committed affecting the valuation of imported merchandise, could be remedied without resort to the judicial forum. In all such cases the appraisement, although irregular or erroneous, or even invalid, would have been final under the statutes had not appropriate steps been taken to invoke the prescribed judicial remedies.

It may be pointed out in passing that the court does not regard the case here in controversy as falling within the purview of the amendment to section 501, *supra*, by section 16 (b) of the Customs Administrative Act of June 25, 1938, nor is it so contended by the Government. Said amendment provides that—

Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the United States Customs Court and shall be assigned to one of the judges, who shall in every case, notwithstanding that the *original appraisement* may for any reason be held invalid or void * * * determine the value of the merchandise from the evidence in the entry record and that adduced at the hearing. [Italics supplied.]

Upon the facts of this case the "original appraisement" has never been challenged in the manner prescribed by the statute and hence it constitutes the only appraisement upon which liquidation may be based.

The foregoing considerations lead unerringly to the conclusion that the attempted appraisement of the merchandise on June 18, 1946, was illegal, null, and void, and that the return of value which approved the entered value as reported by the appraiser January 6, 1944, and received by the collector on January 7, 1944, constituted the statutory appraisement of the importation (section 500, *supra*). In the absence of an appeal therefrom it became final 60 days after the date of the appraiser's report (section 501, *supra*) and formed the basis for the assessment of duties (section 503, Tariff Act of 1930). Note *Ringk & Co.* v. *United States, supra; United States* v. *Dorn & Co., supra; F. W. Myers & Co.* v. *United States, supra.* See also Customs Regulations, 1943, section 14.3 (*f*), which reads as follows:

The report of the appraiser as to value shall not be reconsidered or modified by him after the appraised invoice and report of appraisement has been lodged with the collector, but within 60 days thereafter an appeal for reappraisement may be filed by the collector if he believes the appraisement is incorrect.

The court is not here concerned with the reasons which influenced the appraiser in making a second report of value but rather with the means employed by the appraiser to achieve the results embodied in his second report.

To adopt the views propounded by the defendant herein the court would be compelled to depart from the settled principles of law which

are deemed controlling of this issue and to open the door for a method of correcting by administrative action mistakes or errors which by law can be corrected only by the procedure prescribed by statute.

Other questions raised by counsel either in briefs or in oral argument are not deemed within the proper confines of this inquiry. Hence they will not be considered here.

Accordingly, the motion of the defendant that the court affirm the decision of the appraiser from which this appeal is taken is denied and an exception allowed.

Judgment will be entered in accordance with the views above expressed.